Dear Ms. Livingston:
This office is in receipt of your request for reconsideration of Atty. Gen. Op. 03-202 and that the opinion be recalled inasmuch as reliance was placed upon Atty. Gen. Op. 82-1036, which you maintain should also be recalled having contained erroneous supporting data.
In regard to Atty. Gen. Op. 82-1036 you note that the citation of R.S.33:2473 and 33:2497 therein was particularly troubling "inasmuch as the Town of Welsh has never been in the Municipal Fire and Police Civil Service because of the failure to meet the population parameter for inclusion so R.S. 33:2497 and 2473 did not even apply." Therefore, you find use of the language of that opinion to support an opinion issued to a city in the civil service system would have no legal basis for the assertion that the appointing authority is the local municipal civil service board.
Accordingly, you maintain that the city charter or other authorizing legislation creating a city government must be examined to determine the identity of the appointing authority, but regardless of who is ultimately identified, the municipal fire and police civil service boards are never granted this power.
Additionally, you relate while R.S. 33:2557 provides that the civil service board shall adopt rules to provide for leaves of absence, you disagree with the concept that the civil service board should have control over when such leave is granted, and some entity with responsibility for staffing and efficiency of service must have the authority to regulate when leave is taken.
You further express concern about the Attorney General's implied permission for employees within the Civil Service system to engage in political activity as in Atty. Gen.
Op. 02-0206A, and you take note of Atty. Gen. Op. 97-246 having been cited. Your concern is for the classified employees of the department who may decide to campaign without resigning or taking leave upon reading the opinion, stating, "All classified employees below the level of Chief in Oakdale are prohibited by law from engaging in political activity."
With regard to Atty. Gen. Op. 82-1036 in response to whether the chief of police could grant a leave of absence to an officer under his supervision it referenced R.S. 33:2497 in support of the statement "the appointing authority is vested at all times with the right to regulate the time at which any employee may take leave", and then stated the appointing authority "is the local municipal civil service board as defined in R.S. 33:2473."
After improperly stating therein that the "appointing authority" was the local municipal civil service board, it then noted that the dismissal of a city police officer by the Chief of Police was illegal in that it was effected by the Chief of Police instead of the governing authority as is required by law, and concluded, "Therefore, it is the opinion of this office that the Chief of Police is not empowered to grant an officer under his supervision a leave of absence, and that the power to do so is vested with the local board of aldermen and mayor."
That opinion was in error in stating the local municipal civil service board was the appointing authority, and that the board had the power to grant a police officer a leave of absence. Accordingly, Atty. Gen. Op. 82-1036 must be recalled wherein it determined that the municipal civil service board was the appointing authority rather than the municipal governing authority.
With regard to who is the "appointing authority" this office has observed on numerous occasions that the elected chief of police does not have unilateral authority to hire and fire police personnel although the governing authority cannot act without the recommendation of the elected chief of police as to hiring and firing. In a Lawrason Act municipality the elected chief of police makes recommendations to the mayor and board of aldermen for appointment of police personnel. Atty. Gen. Op. 02-361.
Applying this concept to the instant case we would conclude upon the recommendation of the elected Chief of Police, the "appointing authority" is the governing authority of the municipality, the Mayor and Board of Aldermen.
You agree that R.S. 33:2557 provides that the civil service board shall adopt rules to provide for leaves of absence, but you do not find that the civil service board should have any control over when such leave is granted. You maintain the appointing authority, whoever that might be, has the responsibility to regulate when leave is taken.
We agree with this observation and must conclude that wherein the Civil Service Board has exclusive authority to provide for the amount of annual and sick leave for fire and police personnel, this does not extend to control over when such leave is taken. While the elected chief of police has the inherent power and the authority to supervise and control his office, equipment, and personnel on a day-to-day basis, in order to hire and fire he makes a recommendation to the appointing authority, the mayor and aldermen. He would likewise make a recommendation for leave for his personnel to the latter authority.
R.S. 33:2557, Fire and Police Civil Service Law for Small Municipalities and For Parishes and Fire Protection Districts, provides as follows:
 The board shall adopt rules to provide for leaves of absence in the various classes of the classified service. Such rules shall provide for annual vacation and sick leaves with pay, and for special leaves with or without pay. They may provide for special extended leaves with or without pay or with reduced pay for employees disabled through injury or illness arising out of their employment. The right to regulate the time at which any employee may take an annual leave, or any other leave which is not beyond the control of the employees, shall be vested at all times in the appointing authority. (Emphasis added.)
However, as observed by this office in Atty. Gen. Op. 03-0027A whether to allow the buying, selling, and trading of accrued compensatory time leave is up to the local civil service board, which "if it does allow this activity, must adopt rules to define the practice, outline the conditions for its use, and define how much compensatory leave may be bought, sold, or traded within a given time." We would conclude this would likewise apply to donating time by one employee in the civil service of the police and fire department to another employee of the department.
We cannot agree with your statement of the "Attorney General's implied permission for employees with the Municipal Fire and Police Civil Service system to engage in political activity" as this is clearly not supported by Attorney General's opinions. This office has recognized, "Statutory and constitutional authority both prohibit a civil service employee from engaging in political activity." Atty. Gen. Op. 02-429. Const. Art. X, Sec. 9(C)is pertinent wherein it provides as follows:
 Political Activity Defined. As used in this Part, "political activity" means an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election. The support of issues involving bonded indebtedness, tax referenda, or constitutional amendments shall not be prohibited.
R.S. 33:2429, R.S. 33:2504, and R.S. 33:2564 each provide, "Political activities by and extending to employees of the classified service are prohibited", and only differ in that they apply to municipalities with different populations. As to whether a person is a civil service employee is a question of fact that would have to be individually determined, but the prohibition of these statutes is clearly only for employees in civil service.
We hope this sufficiently clarifies the earlier opinion, but if we can be of further assistance, do not hesitate to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ BARBARA B. RUTLEDGE ASSISTANT ATTORNEY GENERAL
RPI/bbr
Date Released: September 11, 2003